## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

JULIE A. WRIGHT,

        Plaintiff,

vs.                                                                No.  01cv1357 DJS

JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY,

        Defendant.

## MEMORANDUM OPINION

This matter is before the Court on Plaintiff's (Wright's) Motion to Reverse and Remand for a Rehearing [**Doc. No. 9**], filed July 1, 2002, and fully briefed August 15, 2002.  The Commissioner of Social Security issued a final decision denying Wright's application for disability insurance benefits.  Having considered the arguments, pleadings, administrative record, relevant law, and being otherwise fully informed, the Court finds that the motion to remand is not well taken and will be DENIED.

## I.  Background

Wright, now forty-six years old, filed her application for disability insurance benefits on May 24, 1999 (Tr.105-06), alleging disability since March 7, 1998, due to chronic migraine headaches, neck pain, colon problems, and depression.  Wright has a high school education and lacks one semester to complete a bachelors degree in finance.  Wright's past relevant work was as a bank teller, loan officer, marketing assistant, and apartment manager.  On June 11, 2001, the Commissioner's Administrative Law Judge (ALJ) denied benefits, finding that Wright's

degenerative disc disease at C5-6 and migraine headaches were severe impairments but did not singly or in combination meet or equal in severity any of the disorders described in the Listing of Impairments, Subpart P, Appendix 1. The ALJ further found Wright retained the residual functional capacity (RFC) for light work. However, the ALJ found Wright should avoid reaching overhead. Tr. 18. As to her credibility, the ALJ found Wright's testimony was "not fully credible because her subjective complaints of limitation [were] inconsistent and unsupported by the medical evidence and overall record." *Id.* Wright filed a Request for Review of the decision by the Appeals Council. On October 18, 2002, the Appeals Council denied Wright's request for review of the ALJ's decision. Hence, the decision of the ALJ became the final decision of the Commissioner for judicial review purposes. Wright seeks judicial review of the Commissioner's final decision pursuant to 42 U.S.C. § 405(g).

## II.  Standard of Review

The standard of review in this Social Security appeal is whether the Commissioner's final decision is supported by substantial evidence and whether he applied correct legal standards. *Hamilton v. Secretary of Health & Human Servs.,* 961 F.2d 1495, 1497-98 (10th Cir. 1992). Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir. 1994). "Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). Moreover, "all of the ALJ's required findings must be supported by substantial evidence," *Haddock v. Apfel,* 196 F.3d 1084, 1088 (10th Cir. 1999), and all of the relevant medical evidence of record must be considered in making those findings, *see Baker v. Bowen*, 886 F.2d 289, 291

(10th Cir. 1989).  "[I]n addition to discussing the evidence supporting his decision, the ALJ must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." *Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996).  Therefore, while the Court does not reweigh the evidence or try the issues de novo, *see Sisco v. United States Dep't of Health & Human Servs.*, 10 F.3d 739, 741 (10th Cir. 1993), the Court must meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings, in order to determine if the substantiality test has been met.  *See Washington v. Shalala*, 37 F.3d 1437, 1439 (10th Cir. 1994).

### III.  Discussion

In order to qualify for disability insurance benefits or supplemental security income, a claimant must establish a severe physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity.  *Thompson v. Sullivan*, 987 F.2d 1482, 1486 (10th Cir. 1993)(citing 42 U.S.C. §423(d)(1)(A)).  The regulations of the Social Security Administration require the Commissioner to evaluate five factors in a specific sequence in analyzing disability applications. 20 C.F.R. §§ 404.1520 (a-f) and 416.920 (a-f).  The sequential evaluation process ends if, at any step, the Commissioner finds the claimant is not disabled.  *Thompson v. Sullivan*,  987 F.2d at 1487.

At the first four levels of the sequential evaluation process, the claimant must show she is not engaged in substantial gainful employment, she has an impairment or combination of impairments severe enough to limit her ability to do basic work activities, and her impairment meets or equals one of the presumptively disabling impairments listed in the regulations under 20

3

C.F.R. Part 404, Subpt. P, App. 1, or she is unable to perform work she had done in the past. 20

C.F.R. §§ 404.1520 and 416.920.  At the fifth step of the evaluation, the burden of proof shifts to

the Commissioner to show the claimant is able to perform other substantial gainful activity

considering her residual functional capacity, age, education, and prior work experience. *Id.*

    In support of her motion to reverse, Wright makes the following arguments: (1)  the

ALJ's past relevant work finding is contrary to law; (2) the ALJ's decision is inconsistent and her

reasoning is insufficient and misapplies the Treating Physician Rule; (3) the ALJ's credibility

analysis is flawed; and (4) the ALJ erred when she failed to discuss the fact that she was receiving

general assistance benefits from the State of New Mexico.

## A.  Past Relevant Work

    Wright contends the ALJ erred when she found she could return to her past relevant work

as a bank teller and a marketing assistant.  Specifically, Wright contends the ALJ failed to include

any limitations from her headaches in her RFC finding and failed to make findings regarding the

physical and mental demands of her past relevant work.

    At step four of the sequential evaluation process, a claimant bears the burden of proving

that her medical impairments prevent her from performing work that she has performed in the

past. *See Williams v. Bowen*, 844 F.2d 748, 751 & n.2 (10th Cir. 1988).  A step-four analysis is

comprised of three phases.  In order to make the ultimate finding that a claimant is not disabled at

step four, the ALJ is required by the agency's rulings to make specific and detailed predicate

findings concerning the (1) claimant's residual functional capacity; (2) the physical and mental

demands of the claimant's past jobs; and (3) how these demands mesh with the claimant's

particular exertional and nonexertional limitations.  See SSR 96-8p, 1996 WL 374184; SSR 82-62, 1982 WL 31386 at *4, see also *Winfrey v. Chater*, 92 F.3d 1017, 1023-25 (10th Cir.1996).

In her decision, the ALJ set out the five-step sequential evaluation process and discussed each step.  Tr. 16.  At step two, the ALJ found "claimant has at least one (sic) impairment which more than minimally restricts her ability to work, to wit: degenerative disc disease at C5-6 and migraine headaches."  At step three, the ALJ found these impairments to be severe but not presumptively disabling.  At step four, the ALJ discussed Wright's headaches, neck pain and her depression.  *Id.*  The ALJ cited to the record and was very specific and detailed in her analysis of how Wright's headaches impacted her ability to work.  The ALJ found as follows:

> The record indicates that the claimant was imprisoned for five months beginning in March 1998 for possessing amphetamines with intent to sell them.  While in prison, the claimant was treated for headaches, neck pain and depression.
>
> The claimant was treated at University Hospital on November 4, 1998, January 19, 1999 and May 26, 1999 for complaints of headache.  The claimant indicated that she injured her neck two years earlier and has neck spasms after waking up in the morning.  An EEG and MRI of the claimant's brain was normal.  An MRI of the claimant's cervical spine showed no canal stenosis at C5-6 with modest foramina narrowing.  The claimant was assessed with common migraine and musculoskeletal neck spasm and prescribed medications.
>
> The claimant has been conservatively treated by Sam Kassicieh, D.O., for chronic recurrent vascular headaches.  On June 30, 1999 and June 8, 2000, Dr. Kassicieh opined that the claimant was disabled and in need of "continuous care."
> On November 22, 1999, Barry Diskant, M.D., examined the claimant at the request of the State agency.  The claimant reported having daily "migraine" type headaches and neck pain that causes numbness in her left arm.  Dr. Diskant reported that the claimant had limited range of motion of the cervical spine in all directions with marked tenderness in the left mid portion of the cervical musculature.  The doctor noted that the claimant had no muscle spasms in this

5

region but there were some scattered trigger points.  The claimant had normal reflex, motor and sensory examinations.  An x-ray of the claimant's cervical spine demonstrated narrowing of the disc space and spondylosis at C5-6.  Dr. Diskant assessed the claimant with chronic, preexisting vascular and muscle contraction headaches, degenerative disc disease at C5-6 with spondylosis, and chronic nonspecific neck pain without radiculopathy.  The doctor indicated that the claimant would reach maximum medical improvement in three months with proper medical management.  Dr. Diskant opined that the claimant was capable or (sic) working as a loan officer.

* * * * * * * * * *

I have evaluated the claimant's subjective complaints and allegations, including her subjective complaints of pain and fatigue, in accordance with SSR 96-7p.  The record reveals that the claimant has a pretty steady work history.  This evidence indicates the claimant has some motivation for work.  However, the claimant's criminal history and incarceration for possession and intent to sell amphetamines indicate that the claimant has low motivation to work.  Moreover, the medical evidence and the overall record do not support the claimant's allegation that she cannot work.

The claimant alleges that she is severely restricted by her neck pain.  Although the objective medical evidence indicates that the claimant has some degenerative disc disease and spondylosis at C5-6, no doctor has recommended that the claimant have surgery for her neck pain.  Also, the record does not show that the claimant's range of motion in her neck was significantly decreased.  In addition, Dr. Diskant opined that the claimant could perform her past work as a loan officer despite her neck pain.  These factors indicate that the claimant's alleged neck pain is not as debilitating as she alleges.

The claimant testified that overhead work causes her migraine headaches.  However, an EEG and MRI of the claimant's head were normal.  Moreover, the record indicates that the claimant has had this condition for a long time.  The claimant reported that she has had migraines since she was 13 years old, suggesting that the claimant has been able to work with her impairments in the past.  Also, the claimant reported to Dr. Diskant that her medication is effective in alleviating her headaches.  This evidence suggests that the claimant's headaches are not as often or severe as she alleges.

Tr. 16, 17 (citations to the record omitted).  It is evident that from the ALJ's decision that she

considered Wright's migraine headaches and found she could still perform her past relevant work.

To reach this conclusion, the ALJ considered the physical assessments made by the State

agency physicians regarding Wright's ability to perform basic work activities.  Tr. 17.  Dr. Wood

opined that Wright had no exertional limitations but had restrictions in reaching overhead.  The

ALJ also relied on Dr. Diskant evaluation.  Tr. 16-18.  Dr. Diskant is a Fellow of the American

Academy of Disability Evaluating Physicians, Board Certified, American Board of Pain

Management Physician and Board Certified, American Board of Independent Medical Examiner.

Tr. 204.  Dr. Diskant reviewed Wright's medical records, including her treating physicians'

medical records, and obtained a history from Wright.  Dr. Diskant's evaluation indicates that

Wright reported having daily migraine type headaches and pain in her neck.  Tr. 207.  Wright was

very detailed in her description of her headaches and neck pain.  Wright informed Dr. Diskant that

Imitrex tablets and nasal spray alleviated her headaches but that Imitrex injections worked better

and faster than the tablets or nasal spray.  *Id.*  Dr. Diskant performed a thorough physical

examination and opined that Wright's headaches were "mixed headaches" rather than "purely

vascular headaches."  Tr. 213.  Dr. Diskant recommended Wright discontinue her current

treatment of heat, ultrasound, and osteopathic manipulations.  *Id.*  Dr. Diskant recommended

Wright receive treatment from a specialist in the field of physical medicine and rehabilitation

(physiatry).  Dr. Diskant also recommended physical therapy two to three times per week for six

weeks.  Dr. Diskant opined that "[w]ith the implementation of the aforementioned treatment

regimen, it is my expectation that MMI (maximum medical improvement) can be reached within

approximately three months."  Tr. 214.  It was Dr. Diskant's opinion that Wright was capable of

7

working as a loan officer because he found "no occupational limitations or restrictions for this type of work." *Id.*

Wright contends the ALJ did not consider her headaches "adequately" because the record establishes that her headaches are severe and disabling. What Wright is asking the Court to do is reweigh the evidence. This the Court cannot do. The ALJ's finding that Wright's headaches are not disabling is supported by substantial evidence and will not be disturbed.

Next, Wright asserts that the ALJ made no finding regarding the physical demands of her past relevant work. In her decision, the ALJ found Wright had past relevant work as an apartment maintenance manager, bank teller and marketing assistant. Tr. 18. Relying on the Dictionary of Occupational Titles, the ALJ found "claimant's past work as a maintenance manager is generally performed in the national economy at a medium exertional level . . . and her work as a bank teller and marketing assistant are generally performed at the light and sedentary exertional levels, respectively." *Id.* The ALJ then found Wright could perform her past relevant work as a bank teller and marketing assistant.

Wright complains that the ALJ "merely looked at the Dictionary of Occupational Titles' descriptions of the exertional requirements of the jobs and concluded that because the jobs of bank teller and marketing assistant are light and sedentary, [she] could perform them." Pl.'s Mem. in Supp. of Mot. to Reverse at 7. According to Wright, *Winfrey* requires more. *See Winfrey v. Chater*, 92 F.3d at 1023-25 (setting out the three phases of step four). Wright is mistaken. In *Haddock v. Apfel*, 196 F.3d 1084 (10th Cir. 1999), the Tenth Circuit addressed this very issue and held that "the agency accepts the Dictionary's definitions as reliable evidence at step four of the 'functional demands and job duties' of a claimant's past job 'as it is usually

performed in the national economy.'"  *Id.* at 1090 (citing SSR 82-61, 1982 WL 31387, at *2).

The *Haddock* Court noted that the ALJ is allowed to rely conclusively on the information from

the Dictionary at step four.  *Id.*   Therefore, the ALJ properly relied on the Dictionary of

Occupational Titles.

**B.  Treating Physician Rule**

Wright contends the ALJ made inconsistent finding in her decision in terms of applying the

"treating physician" rule.  The regulations provide that the agency generally will give more weight

to medical opinions from treating sources than those from non-treating sources and that the

agency will give controlling weight to the medical opinion of a treating source if it is "well-

supported by medically acceptable clinical and laboratory diagnostic techniques and is not

inconsistent with the other substantial evidence."  20 C.F.R. § 404.1527(d)(2).  Unless good

cause is shown to the contrary, the Commissioner must give substantial weight to the testimony of

the claimant's treating physician.  If the opinion of the claimant's physician is to be disregarded,

specific legitimate reasons for this action must be set forth.  *Byron v. Heckler*, 742 F.2d 1232

(10th Cir. 1984).   Nonetheless, a treating physician's opinion that a claimant is disabled is not

dispositive.  *Castellano v. Secretary of  Health and Human Servs.,* 26 F.3d 1027, 1029 (10th Cir.

1994).

In this case, the ALJ disregarded Dr. Kassicieh's opinion of disability and gave specific

legitimate reasons for disregarding it.  The ALJ found:

> I have considered the medical opinions of the treating and examining physicians.
> However, Dr. Kassicieh's opinion that the claimant is "disabled" is not supported by the
> evidence.  Dr. Kassiecieh's opinion does not appear to be based on objective medical

testing, but rather on the claimant's allegations of symptoms.  Also, his treatment notes are sparse.  Further, the assessment that the claimant is "disabled" is outside the doctor's expertise.  The determination of disability is for the Commissioner to decide under the Regulations.  Based on these factors [I] give Dr. Kassicieh's opinions regarding employability no weight.

Tr. 17.  The ALJ gave Dr. Diskant's opinion more weight because he was a specialist in the field of disability.  The opinions of specialists related to their area of specialty are entitled to more weight than that of a physician who is not a specialist in the area involved.  *See* 20 C.F.R. § 416.927(d)(5).  The ALJ also found Dr. Kassicieh's opinion was not supported by the evidence; this finding is supported by substantial evidence.  Finally, the ALJ correctly pointed out that the Commissioner is not bound by a treating physician's opinion on the ultimate issue of disability.  *See*  20 C.F.R. § 404.1512(e)(1).

**B.  Credibility Determination**

Wright contends the ALJ's finding that she was not credible is not supported by the evidence.  Credibility determinations are peculiarly the province of the finder of fact and will not be upset when supported by substantial evidence.  *Diaz v. Secretary of Health & Human Servs.*, 898 F.2d 774, 777 (10th Cir. 1990).  "Findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings."  *Huston v. Bowen,* 838 F.2d 1125, 1133 (10th Cir. 1988).  However, the ALJ's credibility determination does not require a formalistic factor-by-factor recitation of the evidence.  *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000).  The ALJ need only set forth the specific evidence he relies on in evaluating claimant's credibility.  *Id.*

In this case, the ALJ cited to the record to support her credibility finding.  Specifically, the ALJ found:

> Although she did not testify regarding her daily activities, the claimant reported to Dr. Diskant that she is able to prepare meals, wash dishes, do laundry, grocery shop, drive a car, read, watch television and go to church.  These extensive daily activities indicate that she is more physically and mentally capable than alleged.  Moreover, no doctor of record has opined as severe of limitations as the claimant alleges.  This inconsistency lessens the claimant's credibility.

> Based on the above analysis, I find that the claimant's testimony is not fully credible because her subjective complaints of limitation are inconsistent and unsupported by the medical evidence and overall record.

Tr. 18.  The ALJ also considered Wright's use of pain medication and its effectiveness, her work history, and Dr. Diskant's evaluation.  Wright argues that the ALJ failed to consider Dr. Kassicieh's statement of disability.  However, the ALJ disregarded his statement because it was not supported by the record.   The Court finds that substantial evidence supports the ALJ's credibility determination.

## C.  General Assistance Benefits from the State of New Mexico

Wright contends the ALJ erred by failing to mention in her decision that she received general assistance benefits from the State of New Mexico.  Disability determinations by other agencies are not binding on the Commissioner.  20 C.F.R. § 404.1504.  Wright is correct that the ALJ 's decision does not mention that she was receiving general assistance from the State of New Mexico.  However, the ALJ was aware of this fact because Wright testified about this at the administrative hearing.  Tr. 37-38.  Minimal error by the ALJ does not require reversal or remand.  *See Diaz v. Secretary of Health & Human Servs.*, 898 F.2d at 777.

**D.  Conclusion**

The Court finds that the ALJ applied correct legal standards and her decision is supported by substantial evidence.

A judgment in accordance with this Memorandum Opinion will be entered.

_____
**DON J. SVET**
**UNITED STATES MAGISTRATE JUDGE**